*In re* PIEDMONT AVE. EAST *in the City of Duluth.*

*In re* WEST SUPERIOR *Street in the City of Duluth.*

Argued Nov. 9, 1894.   Affirmed Dec. 28, 1894.

Nos. 9027–9028.

**Laws 1893, ch. 206, does not embrace more than one subject.**
    An act of the legislature entitled "An act to authorize reassessments for
local improvements by cities and to legalize certain of such assessments"
(Laws 1893, ch. 206), is not repugnant to the Constitution, Art. 4, § 27,
in that it embraces more than one subject of legislation.

**Or confer the right to make assessments on other than municipal
officers.**
    Nor does it contravene Art. 9, § 1, of the Constitution.

**The question as to the provision for collection prematurely made.**
    On the contention that the portion of the act (latter part of section 8)
which provides that, after an assessment has been confirmed by the court,
it shall be enforced and collected in the manner other assessments by the
same municipal corporations are enforced and collected, it is *held*, these
appeals being from orders of confirmation, that, in any event, the point
is prematurely made.

**The act embraces assessments which had been held invalid.**
    The statute in question is retroactive in its operation, and includes in
its terms assessments which have been set aside and pronounced invalid
by the courts, as well as those which have not been subjected to judicial
scrutiny.

**Other questions.**
    Other questions of no special importance considered and disposed of.

Appeal by J. B. Scovill, owner of property assessed for benefits
conferred by improvement of Piedmont avenue, Duluth, from an
order of the District Court of St. Louis County, *J. D. Ensign*, J.,
made March 5, 1894, confirming a reassessment of such benefits.

Appeal also by Joseph W. Reynolds, owner of property assessed
for benefits conferred by improvement of West Superior street, Du-
luth, from an order of the same court made the same day confirm-
ing a reassessment of such benefits.

On June 13, 1892, the Board of Public Works of the city of Duluth resolved to grade and improve Piedmont Avenue East in that city at an estimated expense of $110,000. They assessed the greater portion of this sum upon property benefited by the improvement. The assessment was on August 29, 1892, revised and confirmed by the District Court of St. Louis County. Certain owners of property assessed filed their relation and obtained from this court a writ of *certiorari*. A return was made and argument heard and this court on December 16, 1892, held the assessment invalid. *State ex rel.* v. *Judges of District Court*, 51 Minn. 539. By Laws 1893, ch. 206, approved March 29, 1893, cities were authorized to make reassessments for local improvements. Under this act the city of Duluth made a statement of the facts and filed it in the office of the clerk of the District Court of St. Louis county and caused notice to be given by publication in the official newspaper that on July 29, 1893, it would move the court for the appointment of three disinterested residents as appraisers to determine and assess the benefits accruing to local property by reason of the improvement. On that day such appraisers were appointed. They gave notice and met August 9, 1893, and made the assessment and their report was filed in the clerk's office November 23, 1893. Notice was then given that the report had been filed and that the city would on December 9, 1893, apply to the District Court for an order confirming it. J. B. Scovill, the appellant, and others filed objections, each party showing that he owned lots assessed and stating his exceptions to the report. Testimony was submitted and arguments made and the District Court on March 5, 1894, made an order by which the report and assessment were in all things fully ratified and confirmed and the objections thereto overruled. From this order Scovill appeals.

Prior to March 29, 1893, the city of Duluth took measures also to improve West Superior Street and an assessment of benefits exceeding $98,000 was made on adjacent real estate, including that of Joseph W. Reynolds. On May 4, 1893, the assessment was adjudged invalid and set aside by the District Court of St. Louis county. Under Laws 1893, ch. 206, the city took proceedings to reassess the benefits and proceedings similar to those above stated were had. On March 5, 1894, an order was made confirming the assessment and overruling objections. From this order Reynolds appeals.

*M. Douglas,* and *John A. Keyes,* for both appellants.

Laws 1893, ch. 206, under which these reassessments were made, is in contravention of the Constitution, Art. 4, § 27, which provides that no law shall embrace more than one subject, which shall be expressed in its title. The objection is that the statute embraces two distinct subjects and both are expressed in its title, and it is therefore void for duplicity. Its title is, "An act to authorize reassessments for local improvements by cities, and to legalize certain of such assessments." Of these two provisions, one authorizes a reassessment, and the other legalizes former assessments. There are no cases in this state touching upon this particular defect. *Skinner* v. *Wilhelm,* 63 Mich. 568; *People ex rel.* v. *Nelson,* 133 Ill. 565; *Brown* v. *State,* 79 Ga. 324; *Tingue* v. *Village of Port Chester,* 101 N. Y. 301.

Constitution, Art. 9, § 1, gives the legislature power to authorize a municipal corporation to levy assessments for local improvements. It is a proviso to the section and is subject to strict construction. Municipal corporations only can receive the right to levy assessments for local improvements. The legislature cannot give the right to any person or to any other corporation. This act does not vest the power to levy the assessment either in the municipal corporation or in any board connected with or made a part of it by law. It vests the power of making the levy in the proceeding for reassessment in three assessors and in the District Court. The three assessors are appointed by the court. They determine the amount that is to be reassessed. As a matter of fact there is no specific direction in the act that they shall levy an assessment at all, but they are directed to make an assessment roll and return it to the District Court, and the District Court without being bound by anything done by the assessors shall review and confirm it or send it back to other assessors, as the court may see fit. This question has never been adjudged in this state. It was raised in *State ex rel.* v. *District Court,* 33 Minn. 235, but was not decided.

All power of assessment and reassessment is by Duluth charter vested in the Board of Public Works. Sp. Laws 1887, ch. 2, subch. 4, § 10. General acts do not repeal the provisions of charters granted to municipal and other corporations or special acts passed for their

benefit, although conflicting with such general provisions.   *Wood* v. *Election Com'rs,* 58 Cal. 561; *Harrisburg* v. *Sheck,* 104 Pa. St. 53; *Cumberland* v. *Magruder,* 34 Md. 381; *Burke* v. *Jeffries,* 20 Ia. 145; *Tierney* v. *Dodge,* 9 Minn. 166.

Laws 1893, ch. 206, is special legislation and void under the Constitution, Art. 4, § 33, as amended in 1893.   Everything relating to the disposition of the assessment roll, what shall be done with it, the officer into whose hands it shall come, where it shall be filled and how enforced, is left wholly undetermined and unprovided for.   These matters are subject to as many different regulations as there are different cities and charters in the state.   The very best argument that could possibly be made touching this point is that made by this court in its opinion in *Alexander* v. *City of Duluth,* 57 Minn. 47, and the cases there cited.   *Fitzgerald* v. *New Brunswick,* 47 N. J. Law, 479; *Commonwealth* v. *McCullough,* 90 Va. 597.

Laws 1893, ch. 206, § 2, is prospective and not retrospective in its action.   The words, "shall be set aside or pronounced invalid," mean in the future or after the passage of the act.   The tense is future, denoting some future action, and not past action.   Statutes of this kind are never retroactive but always prospective in their action, and the presumption is always against their having a retroactive effect.   Endlich, Stat. § 271.   *Giles* v. *Giles,* 22 Minn. 348.

This act was approved March 29, 1893.   The assessment in Piedmont avenue case was pronounced invalid December 16, 1892.   The act does not apply to it.

In the West Superior street case the record shows upon its face that the assessment was not legally and correctly made.   The report of the appraisers states: "We ascertained the actual cost of said improvement including the expense of making the surveys, plans, specifications and superintendence to be the sum of $91,092.   We determined that there was property benefited to the extent of the improvement, and apportioned the cost of such improvement upon the property which we so found benefited as appears by the assessment roll hereto annexed."   There is no authority, either in the statute or constitution for any such procedure as apportioning the cost of the improvement, the assessors are directed to make their assessment against each piece and parcel of land deemed by them to

be benefited by reason of said improvement. The assessors did not follow the law in this respect at all, but what they did actually do appears by their report to be something like this: They laid out an assessment district comprised within a certain territory, and having done that they then declared that that property was benefited to the extent of $91,092, and having done that, they then apportioned said amount upon said property by a mathematical method of division. This was clearly an illegal principle of assessment as appears on its face, and as such cannot stand. *State ex rel.* v. *District Court*, 29 Minn. 62; *State ex rel.* v. *Commissioners*, 38 N. J. Law, 190; *State ex rel.* v. *Mayor*, 40 N. J. Law, 485; *Watkins* v. *Zwietusch*, 47 Wis. 513; *Johnson* v. *City of Milwaukee*, 40 Wis. 315; *Chamberlain* v. *City of Cleveland*, 34 Ohio St. 551; *State ex rel.* v. *District Court*, 47 Minn. 406; *State ex rel.* v. *District Court*, 52 Minn. 283.

*Page Morris*, for respondent in both appeals.

Laws 1893, ch. 206, is not in contravention of the Constitution, Art. 4, § 27. It does not embrace two distinct subjects. The term "subject" as used in the constitution is to be given a broad and extended meaning, so as to allow the legislature full scope to include in one act all matters having a logical or natural connection. To constitute duplicity of subject an act must embrace two or more dissimilar and discordant subjects that by no fair intendment can be considered as having any legitimate connection with or relation to each other. *Johnson* v. *Harrison*, 47 Minn. 575; *Auditor General* v. *Stiles*, 83 Mich. 460; *Feek* v. *Township Board*, 82 Mich. 393; *State ex rel.* v. *Newark*, 34 N. J. Law, 236.

Nor is the act in contravention of the Constitution, Art. 9, § 1. It is modeled after the Minneapolis Park Act (Sp. Laws 1883, ch. 281) and if the assessment was valid under that act, it is under this. *State ex rel.* v. *District Court*, 33 Minn. 235.

Under that act the application for the appointment of appraisers was made to the court by the Board of Park Commissioners. Under this act the proceeding is instituted and the whole machinery of the act set in motion by the municipal corporation itself through its duly authorized legal officers. The city of Duluth appeared in court

and filed the statement required by law. The statement was verified by the mayor. No one questions the official position of these officers or their acts. They represent the city in the prosecution of this proceeding. *State ex rel.* v. *District Court,* 33 Minn. 235; *State ex rel.* v. *Ensign,* 55 Minn. 278.

This act does not give power to levy taxes for local improvements to an agency entirely independent of the municipal government. The agency provided for can only act when set in motion by the municipality; when it has determined the political question as to whether the local improvement should be made and whether the cost should be borne by the entire city or by the property specially benefited. The city levies the assessment. The mere work of distribution over lots, a *quasi* judicial function, is left for the court. If we admit that the appraisers are officers of the court we are no nearer the conclusion that the act is unconstitutional than before, because the real question is, who levies the assessment.

Laws 1893, ch. 206, is not special legislation or in contravention of the Constitution, Art. 4, § 33, as amended in 1892, which provides that the legislature shall pass no local or special law regulating the affairs of any county, city, village, &c., nor amend, extend or modify any such law. *State ex rel.* v. *Cooley,* 56 Minn. 540; *Nichols* v. *Walter,* 37 Minn. 264; *Alexander* v. *City of Duluth,* 57 Minn. 47.

The act is intended to be retrospective and to apply to cases like that of Piedmont avenue. Benefits had been conferred upon property and an assessment had already been made which had been set aside for defects in the proceedings. This is a remedial act by which the legislature provides a means of legalizing what it might previously have ordered. To such an act the presumption against legislation being retroactive does not apply. In the absence of language to the contrary it is presumed to be retrospective. The act deals with "assessments set aside" and the evident meaning of the language is "whenever an assessment is set aside." *Locke* v. *New Orleans,* 4 Wall. 172; *Converse* v. *Burrows,* 2 Minn. 229; *Birmingham Trust & Sav. Co.* v. *East Lake Land Co.,* 101 Ala. 304; *Excelsior Mfg. Co.* v. *Keyser,* 62 Miss. 155; *Wood* v. *Westborough,* 140 Mass. 403; *Fisher* v. *Hervey,* 6 Colo. 16; *Berry* v. *Clary,* 77 Me. 482; *Winslow* v. *People,* 117 Ill. 152; *Buckingham* v. *Moss,* 40 Conn. 461.

In *Tompkins* v. *Forrestal*, 54 Minn. 119, a statute was held to be retroactive. The same rule is laid down in *Giles* v. *Giles*, 22 Minn. 348; *Wilson* v. *Red Wing School District*, 22 Minn. 488; *State* v. *Waholz*, 28 Minn. 114. In view of the cases cited it must be held that this act covers such cases as the Piedmont avenue improvement.

The fact that in the West Superior street case the appraisers in their report used the words, "We apportioned the cost of such improvement upon the property which we found benefited," instead of saying they assessed the benefits conferred, was a mere inaccuracy of expression. What they in fact did, appears from the context and from the other papers filed with the report. This report read in connection with the assessment roll, which is a part of it, shows that they followed the statute exactly. They were not lawyers. They used the words as any ordinary man would use them.

The record shows that the appraisers annexed to the assessment roll their report of all their doings and signed the report. They thereby signed the assessment roll.

COLLINS, J. The questions presented by these appeals arise out of the passage (March 29, 1893) of an act of the legislature entitled "An act to authorize reassessments for local improvements by cities and to legalize certain of such assessments" (Laws 1893, ch. 206). This legislation was the result, probably, of a decision of this court —*State ex rel.* v. *Judges of District Court*, 51 Minn. 539, (53 N. W. 800, and 55 N. W. 122)—filed December 16, 1892. Under this act of 1893, the authorities of the city of Duluth took steps to reassess the property alleged to have been benefited by the improvement involved in that case, and also to reassess property said to have been benefited by the improvement of West Superior street. The appeal of one of these parties, *J. B. Scoville*, relates to the reassessment for the improvement of *Piedmont avenue east*; while that of appellant *J. W. Reynolds* relates to a reassessment to cover the cost of improving *West Superior street*. The appeals are from orders confirming assessments, and, with one exception in each case, the questions raised are common to both.

It is argued that the act under consideration is in contravention of the Constitution, Art. 4, § 27, in that it embraces more than one

subject of legislation. This claim we dispose of by calling attention to *Johnson* v. *Harrison*, 47 Minn. 575, (50 N. W. 923,) in which this feature of our fundamental law is very fully discussed, and to which nothing can be added in the way of argument.

It is also contended that the law of 1893 contravenes the Constitution, Art. 9, § 1. The point made here is that the assessment is not levied by the municipal corporation, but the power is vested in, and is exercised by, the District Court, and three appraisers appointed by it. Enough has been said in *State* v. *District Court of Hennepin Co.*, 33 Minn. 235, (22 N. W. 625,) to dispose of this contention adversely to appellants. See, also, *State ex rel.* v. *Ensign*, 55 Minn. 278, (56 N. W. 1006.)

It is further argued that the act of 1893 is opposed to that part of the Constitution, Art. 4, § 33, as amended in 1892, which provides that no local or special law shall be passed regulating the affairs of any county, city, or village; and also that, while the legislature may repeal any existing local or special law, it shall not amend, extend, or modify any of the same. The objection to the constitutionality of Laws 1893, ch. 206, is specially directed against that portion of it (latter part of section 8) which provides that after the assessment has been confirmed by the court, it shall be enforced and collected in the manner other assessments made by the same municipal corporations are enforced and collected. It is said by appellants' counsel that, at best, everything relating to proceedings subsequent to the orders of confirmation is by this language left subject to as many different regulations as there are different charters; and the recent case of *Alexander* v. *City of Duluth*, 57 Minn. 47, (58 N. W. 866,) is confidently relied on to sustain counsel's claim that this provision of the law is repugnant to that part of the Constitution prohibiting local or special legislation. If there is anything in this point,—and we are not prepared to say that it is untenable,—it is prematurely made. These proceedings have not yet reached a stage where the city is undertaking to enforce payment of the amounts assessed in the manner prescribed by its charter, and it may never so undertake. Therefore, for the purpose of these appeals, we may admit the invalidity of the provision in question; but the remainder of the law is unaffected by such

admission, and, until the municipality shall proceed in the manner provided by its charter to enforce collection, appellants are not in position to invoke the constitutional objection.

None of the remaining questions common to both cases need special reference, for they are without merit.

We have stated that in each case a question has been raised peculiar to it. In the *Scoville* appeal it is contended that a reassessment for the improvement of *Piedmont Avenue East* cannot be made, because not within the terms of the act of 1893. It has been observed that the decision in *State ex rel.* v. *Judges of District Court*, 51 Minn. 539, was filed prior to the enactment of Laws 1893, ch. 206; and it is claimed that, by the language used, such law was made wholly prospective in operation, applicable only in cases where an assessment is set aside or pronounced invalid subsequent to the day of its passage. The power of the legislature to provide methods whereby municipal corporations can order reassessments against property benefited by local improvements, where assessments theretofore made have been set aside for defects or irregularities in cases where the prerequisites which were disregarded might have been dispensed with in the law under which the original assessment was made, is not questioned.

Laws 1893, ch. 206, is remedial in its nature, and the legislative intent is to be gathered by a careful examination and consideration of all of its provisions, not from any particular form of words or phrases which may have been used. We find, by the first section of this act, that all improvements made prior to its passage, in disregard of charter provisions requiring the previous establishment of a permanent grade upon the streets to be improved, are expressly covered.

Again, in the second section, we observe that assessments "heretofore made or hereafter to be made" are explicitly provided for, unless the subsequent phrase "shall be set aside or pronounced invalid" modifies the broad language theretofore used, and must be deemed as excluding from its operation assessments previously set aside. In the use of the word "shall," in the above quotation, there is nothing to indicate a legislative intent to distinguish and discriminate between assessments already set aside and pronounced invalid, and

those which, though made, had not been subjected to the scrutiny of the court. Certainly, there was no reason why the lawmakers should attempt to distinguish or discriminate. The fact existed in the one case as much as in the other that benefits had been conferred upon adjacent property, and that assessments had been made to cover the expense of these benefits. That the assessments had been set aside through mere technicalities could not lessen or affect the obligation of the property holders to pay for the same. Having in mind all of the facts, the spirit, purpose, and especially the wording of the remedial act, and that it related solely to the mode of procedure for the enforcement of an existing obligation and liability, we have no hesitation in pronouncing it retroactive.

In the *Reynolds* appeal as to *West Superior Street* counsel makes the point that the assessment was not properly made, the assertion being that, from the reports of the assessors, it appears that they laid out an assessment district embracing certain territory, declared the property within it benefited to the extent of the cost of the improvement, and then "apportioned" the total cost upon said property by a mathematical method of division; and, further, that the pretended assessment roll was not signed by the assessors, or in any manner designated by them as the assessment roll made according to benefits. There is nothing in either of these points. The assessors' report, read in connection with the roll, which was attached to and made a part of it, shows clearly that the statute was strictly followed. They report the total cost of the improvement; that they found property benefited to that amount, and apportioned that amount to the property thus found to be benefited, assessing to each piece or parcel of land the amount which that piece or parcel was found to be benefited, as shown by the assessment roll. The word "apportioned," in the report, may have been used inadvertently, but its meaning is evident when we read the entire document. As before said, the report was attached to and made a part of the assessment roll. The report itself, in which the roll was designated as "the assessment roll hereunto annexed," was signed by the assessors, and this was a sufficient compliance with the statute.

Orders affirmed.

(Opinion published 61 N. W. 678.)