## G. W. TRIMBLE et al., Appellants, v. JOHN A. STEWART et al., Respondents.

### Kansas City Court of Appeals, February 17, 1913.

1. **TAXBILLS: Street Improvements: Conformity to Specifications.** In the work of putting down street improvements, a substantial compliance with the specifications is sufficient. Whether there has been a substantial compliance depends somewhat on the circumstances of each case.

2. ———: ———: **Cancellation.** A variation from the specifications which does not materially change the character, location or cost of the improvements, or work a fraud on the public, or give an advantage to the contractor, or injure the appearance, or value of the property, is not sufficient to justify the cancellation of the taxbills by a court of equity.

3. ———: ———: **Apportionment of cost.** Where a street in a city of the third class is graded and paved as one improvement, the whole cost is apportioned to the abutting property according to the front foot without regard to the fact that the paving is forty feet wide in the business blocks and only thirty feet wide in the residence blocks. The law does not require uniformity in width.

Appeal from Boone Circuit Court.—*Hon. D. H. Harris,* Judge.

AFFIRMED.

*N. T. Gentry* for appellants.

*E. W. Hinton* for respondents.

TRIMBLE, J.—Appellants, as owners of a residence lot fronting west on Ninth street in Columbia, sue in equity to cancel a special taxbill for paving said street. The cancellation of the taxbill is prayed for upon three grounds: 1st, that the street in front of appellants' property was graded below the established grade; 2d, that the paving was not placed exactly in the middle of the street; and 3d, that the cost of the work was not properly apportioned. The regularity of the proceedings and the performance of the work is conceded in every other respect.

Both the resolution and ordinance provided that the street should be brought to the established grade and should be paved forty feet wide for several specified blocks in the business part of the city and thirty feet wide in the others.

The contract was awarded defendant Stewart, who did the work under the direction of the city engineer and his deputy. The grade stakes and the curb lines were set by the engineer, and the contractor conformed strictly to them without knowledge of any variation from the established grade. The engineer laid out practically all of the street strictly according to the established grade, except that in the block in which plaintiffs' property is situated, he found the sidewalks, which were already in place, slightly below grade; and he set the paving grade stakes to correspond, thus making the pavement slightly lower than the paper grade. The evidence varied as to the extent of this difference. A witness for plaintiffs said the pavement at the northeast corner of the property was a foot lower than the established grade, and that at the southeast corner it was six inches lower. The city engineer, testifying for defendants, said the difference

was only about three inches. Whether the trial court found this difference to be three, six or twelve inches does not appear, and we are in no better position to determine that fact than he. But the precise difference is not important if, under all the circumstances and conditions of the particular spot or locality, the variation does not create a substantial change in the improvement nor injure the appearance or use and, therefore, value of the property. In certain places a difference of three inches might be very substantial, rendering the properly unsightly and diminishing its value, while in others a difference of one foot would make no difference. Just as a half inch added to a man's nose would disfigure him greatly, while ten times that much added to the length of his overcoat would never be noticed. So that the question whether this difference in grade, be it three or twelve inches, is sufficient to justify the cancellation of the taxbill by a court of equity depends upon whether the law requires, in the doing of the work, a literal and exact conformity to the terms on which it is authorized or only a substantial compliance therewith. And whether there has been a substantial conformity to the grade will depend somewhat upon the situation and conditions at the particular spot complained of. The rule of law in this State is that a substantial conformity is all that is required, and not a literal compliance. [Platte City v. Paxton, 141 Mo. App. 175; Porter v. Paving Co., 214 Mo. l. c. 20; St. Louis v. Ruecking, 232 Mo. 325.]

Was there a substantial compliance in this case? The grading was done by the contractor in strict accordance with the grade stakes set by the city engineer. The contractor did not know these stakes varied from the established grade. He did not therefore slight or avoid the work but did more grading than the specifications called for. The deeper grade did not detract in the slightest degree from the sightliness of the

street or its usefulness for travel. The city engineer set the grade stakes in front of plaintiffs' property a trifle lower than the established grade in order that the pavement would conform to plaintiffs' sidewalk which was already constructed. If the pavement had been put on the established paper grade, the roadway of the street would have been higher than the sidewalk; and the latter would have had no drainage, and would therefore have to be raised. Plaintiffs seem to admit that no injury has been caused to the property by this change in grade so long as it remains residence property; but they claim that in case the property should ever be used for business purposes, a slight grading of the sidewalk would be necessary. They are then in this position: Owing to the location of their sidewalk, if the pavement is put strictly on the established paper grade, they will have to elevate their sidewalk *now*; but as the pavement has been made to conform to their sidewalk, they *may* have to lower their sidewalk in the *future*. Reduced to these terms it is not apparent to us that plaintiffs' alleged grievance on this account is such as to commend itself to the observant eyes of a chancellor anxious to do equity. Plaintiffs' property has a frontage of a little over 142 feet. The difference in grade at one corner from that at the other is not discernible to the eye. Under all the circumstances, therefore, there was a substantial compliance with the terms relating to grade.

The question presented by the pavement slightly deviating from the center of the street is a little more difficult of solution, and yet it is governed by the same principles as the variation from the grade. A short distance south of plaintiff's property, Ninth street has an offset or jog where it crosses Elm street. Some six or seven years before, Ninth street had been graded and paved with gravel. To avoid an offset in the graveled track it was laid so that the north and

south center line of the gravel varied a little from the true center of the street going a little east of the center as it went south. When the paving was put down it simply conformed to this existing condition. The offset, a thing to be avoided as interfering with the use and symmetry of the street, was thus avoided or obliterated. The result, however, was to make the parking (the grassy strip between the sidewalk and curb) on plaintiffs' side a little narrower than the one across the street. The edge of plaintiffs' sidewalk next to the property line was two feet outside of said property line and this made the parking narrower than it otherwise would have been. One witness says this is what makes it visibly narrower than the parking on the other side. As conditions now are, the parking is at least three feet and eight inches wide on plaintiffs' side. Most of the testimony offered by plaintiffs as to the impairment of the property relates to that alleged to have been caused by the change in grade. Some, however, seems to be based on both causes. There was testimony on defendants side, however, going to show that the slight deviation from the center avoided the ugly offset in the street and did not impair the beauty or value of the property. This variation was not made to relieve the contractor of any burden or duty, nor was it made after he began work or with his knowledge or consent. The curb lines were marked out in the street by the city engineer and the contractor followed them implicitly, thinking they were the lines called for in the specifications. Hence this case is not like those where a change in the requirements worked a fraud on the public, or in other ways relieved the contractor of doing something he should have done, or substantially changed the location of the improvement or the specifications thereof. In all such cases the presence of any one or more of these results made the change a substantial and material change and not a mere slight deviation. But

in this case the work done was in substantial, though perhaps not literal, compliance with the requirements. This is sufficient, under the rulings in our State, to prevent cancellation of the taxbills.

The objection that the cost was not properly apportioned is based upon the fact that in certain specified business blocks the pavement was forty feet in width while in the residence blocks it was only thirty feet wide, and the whole cost was apportioned to the abutting property according to the frontage without regard to the width of the paving. But the whole cost is required to be so apportioned. [Sec. 9254, R. S. Mo. 1909.] The law does not require the paving to be uniform in width. Nor would it be wise to require uniformity, since in business portions of a city it would be necessary to pave from sidewalk to sidewalk, while in a block or so away a less width would not only be all that is necessary but more beautiful and attractive, besides rendering the whole less expensive. The Legislature might have said that the lots having the wider pavement should bear the greater expense, or that the portions having the same width should be put in sections to themselves and the cost of each section assessed to the lots fronting on each. But as it did not, but said that when a street is paved the whole cost shall be assesed against the abutting property in proportion to the front foot; this is the only method permissible.

Finding nothing in the record to justify the intervention of a court of equity, the decree of the chancellor dismissing the bill is affirmed. All concur.